# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN F. BLOSS, *in his capacity*    )
*as Court-appointed Receiver for*    )
*BRYCE AARON RHODES,*    )
    )
        Plaintiff,    )
    )
        v.    )        1:24CV536
    )
GOVERNMENT EMPLOYEES    )
INSURANCE COMPANY,    )
    )
        Defendant.    )

## MEMORANDUM OPINION AND ORDER[1]

This matter is before the Court on Defendant Government Employees Insurance Company's ("GEICO") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.2. (Docket Entry 10.) Plaintiff John F. Bloss, in his capacity as court-appointed Receiver for Bryce Aaron Rhodes ("Rhodes"), has filed a Response in opposition to said Motion (Docket Entry 12) and GEICO has filed a Reply (Docket Entry 13). For the reasons stated herein, the undersigned grants GEICO's Motion to Dismiss.

## I. BACKGROUND

This action stems from GEICO's alleged failure to settle a catastrophic bodily injury claim against its insured, Rhodes. (*See generally* Complaint, Docket Entry 1 ("Compl.").) By way of background, Plaintiff alleges that on or before August 9, 2020, Rhodes's parents or

---

[1] By Order of Reference, this matter was referred to the undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). (Docket Entry 15.)

stepparents purchased a motor vehicle liability insurance policy from GEICO (the "Policy"). (*Id.* ¶¶ 11, 13-14.)  As an additional driver, Plaintiff alleges that Rhodes was insured under the Policy on August 9, 2020, and that the Policy provided coverage for a 2014 Ford passenger vehicle owned by Rhodes' parents.  (*Id.* ¶¶ 12, 19, 22-29; *see also* Ex. 4, Docket Entry 1-4.) Thus, while Rhodes was driving or using the Ford vehicle on August 9, 2020, he was allegedly covered under the Policy.  (Compl. ¶ 30.)  At that time, in pertinent part, the Policy provided a liability limit of $100,000, which was "an amount greater than the minimum amount of $30,000 as required by [North Carolina law.]"  (*Id.* ¶ 31.)

A wreck occurred on August 9, 2020, while Rhodes was driving the Ford vehicle.  (*Id.* ¶¶ 32-37.)  Rhodes drove into the path of Kourtnie Nakai Herrington-Schober ("Schober") causing her motorcycle to overturn and Schober to be ejected.  (*Id.* ¶ 38; Ex. 5, Docket Entry 1-5 at 1.)[2]  After suffering serious bodily injuries, including injuries which required below-the-knee amputation of her left leg, Schober filed suit against Rhodes to recover damages (the "Schober Claim").  (Compl. ¶ 39; Ex. 2, Docket Entry 1-2 at 1.)  Schober retained Attorney Tyler J. Stiles ("Attorney Stiles") to pursue her claims, who initiated contact with GEICO on August 18, 2020.  (Compl. ¶¶ 41-42.)

On August 20, 2020, a GEICO representative, Jenna Bryant, acknowledged receipt of Attorney Stiles' letter of representation and provided Attorney Stiles with the claim number assigned to the Schober Claim.  (*Id.* ¶ 43; *see also* Ex. 5, Docket Enty 1-5.)  Attorney Stiles then wrote to Ms. Bryant on September 11, 2020, seeking release of GEICO's policy limits

---

[2] Unless otherwise noted, all citations in this order to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

applicable to the Schober Claim and also indicating his willingness to consent to release of Schober's medical records and to participate in mediation regarding said claim. (*See* Compl. ¶ 44; *see also* Ex. 6, Docket Entry 1-6.) Ms. Bryant responded on September 15, 2020, indicating that all medical records related to the claimed injury would need to be provided in order to release the Policy information. (Compl. ¶ 45; *see also* Ex. 7, Docket Entry 1-7.)

The Complaint further alleges that on September 18, 2020, Ms. Bryant wrote Attorney Stiles to confirm a telephone conversation between the two earlier that day during which Ms. Bryant offered the Policy limit of $100,000 to settle the Schober Claim subject to certain conditions. (Compl. ¶ 46; *see also* Ex. 8, Docket Entry 1-8.) Thereafter on September 21, 2020, GEICO issued a $100,000 check to payable to Schober and Attorney Stiles' law firm. (Compl. ¶ 47; *see also* Ex. 9, Docket Entry 1-9.) On December 16, 2020, Attorney Stiles "wrote to … Bryant acknowledging receipt of GEICO's offer to tender policy limits and requesting [the following additional information] before the offer can be accepted:" (1) the declarations page for the Policy; (2) the declarations page for any other applicable GEICO policies; (3) "[a] notarized affidavit of No Additional Insurance completed by GEICO's insured;" and (4) "[a] notarized affidavit of No Insurance completed by Rhodes[.]" (Compl. ¶ 48; *see also* Ex. 10, Docket Entry 1-10.) Ms. Bryant responded the same day and sent Attorney Stiles a certification of the Policy's policy limit. (Compl. ¶ 49; *see also* Ex. 11, Docket Entry 1-11.)

On January 15, 2021, Ms. Bryant communicated with staff at Attorney Stiles' law firm that she was working on the requested affidavits. (Compl. ¶ 50.) On January 19, 2021, she wrote Attorney Stiles and indicated that the $100,000 check issued on September 18, 2020, had not been cashed and requested that he call to further discuss the matter, since payment would void 180 days

3

after issuance of the check. (*Id.* ¶ 51; *see also* Ex. 12, Docket Entry 1-12.) On March 5, 2021, Attorney Stiles wrote to Ms. Bryant and made the following demand for settlement:

> GEICO offered to settle the Claim on terms contained in GEICO's letter dated September 18, 2020[,] and also in a proposed release form which GEICO enclosed with that letter. Ms. Schober rejects GEICO's terms. However, Ms. Schober offers to settle the Claim in exchange for GEICO's payment to her of $100,000 on the following conditions:
>
> - Ms. Schober will sign, have notarized, and deliver to GEICO the revised release which is labeled "Version 2" in the lower left corner of the document (a copy of which is included with this letter), and
> - I will act as Ms. Schober's disbursing agent for any liens against the settlement funds to ensure that such liens are properly satisfied.
>
> Please notify me promptly by fax if GEICO agrees to the above conditions. Otherwise, I will promptly return to GEICO the check that you sent following your letter dated September 18, 2020.

(Compl. ¶ 52; *see also* Ex. 13, Docket Entry 1-13.) "Version 2" of the release provided by Attorney Stiles differed from the release suggested by GEICO in several ways, including removing GEICO as a released party, removing "all other persons, firms, or corporations" as released parties, removing "in full" from the portion of the language indicating that the release was "in full of all claims" and/or "in full[,]" and otherwise excluding certain language. (Compl. ¶ 53.)

Thereafter on March 11, 2021, Attorney Stiles received an email from Attorney Christopher Skinner ("Attorney Skinner") on behalf of GEICO seeking an explanation of Attorney Stiles' requested changes to the release. (Compl. ¶ 54; *see also* Ex. 14, Docket Entry 1-14.) Attorney Stiles and Attorney Skinner exchanged emails in which Attorney Stiles indicated that the proposed changes to the release "speak for [themselves;]" Attorney Skinner had further questions, but Attorney Stiles declined to further discuss the issue, instead

4

ultimately inquiring as to "whether GEICO accepts the terms" in the March 5, 2021, demand letter. (Compl. ¶¶ 55-57; *see also* Exs. 15-17, Docket Entries 1-15, 1-16, 1-17.)

On March 20, 2021, 15 days after extending the settlement demand offer, Attorney Stiles returned the $100,000 check. (*Id.* ¶ 59; *see also* Ex. 18, Docket Entry 1-18.) The next day, Schober's second attorney, J. David Stradley ("Attorney Stradley"), sent a letter to Ms. Bryant providing the tracking number for the returned check and expressing revocation of all settlement offers. (Compl. ¶ 60; *see also* Ex. 19, Docket Entry 1-19.) Around the same time, Ms. Bryant wrote a letter to Attorney Stiles requesting that he call to discuss the $100,000 check. (Compl. ¶ 61; *see also* Ex. 20, Docket Entry 1-20.) On March 25, 2021, another attorney working alongside Attorney Stradley wrote Ms. Bryant to reiterate that the $100,000 check had been returned; postal records indicate that the envelope was delivered on March 24, 2021. (Compl. ¶ 62; *see also* Ex. 21, Docket Entry 1-21.)

The Complaint goes on to allege that on March 29, 2021, Schober filed suit in North Carolina state court ("underlying tort action"). (Compl. ¶ 63; *see also* Ex. 2, Docket Entry 1-2.) It further alleges that "GEICO knew [that refusing to settle the Schober Claim] would result in Schober obtaining a large judgment against Rhodes." (Compl. ¶ 64.) On October 7, 2022, a consent judgment was entered against Rhodes in the underlying tort action in the principal amount of $2.8 million dollars plus prejudgment interest at the rate of 8% beginning March 20, 2021, until paid. (*Id.* ¶ 22; *see also*, Ex. 22, Docket Entry 1-22.) The Complaint alleges that, beyond the coverage from the Policy, Rhodes never had the financial ability to settle the Schober Claim. (Compl. ¶ 67.) The Complaint further alleges that if GEICO had agreed to the terms of the offer by Rhodes' attorney on March 5, 2021, Schober would have

5

settled her claim against Rhodes in exchange for the payment of the Policy limit and the consent judgment for $2.8 million dollars would have not been entered.  (Compl. ¶¶ 68-69.)

As a result, Plaintiff brings three causes of action against GEICO: (1) Breach of Contractual Duty to Settle and Covenant of Good Faith and Fair Dealing (*id.* ¶¶ 70-84); (2) Unfair and Deceptive Trade Practices for Failure to Settle (*id.* ¶¶ 85-98); and (3) Bad Faith Refusal to Pay Insurance Claim (*id.* ¶¶ 99-109).  Plaintiff seeks compensatory, punitive, and treble damages, as well as declaratory relief, attorney's fees and other costs associated with bringing this action.  (*See* Compl. at 23.)

Plaintiff was appointed as Receiver for Rhodes by a North Carolina state Court by order dated May 29, 2024.  (Compl. ¶¶ 1-2; *see also* Ex. 1, Docket Entry 1-1.)  Per the terms of said order, Plaintiff is empowered to collect Receivership Assets including "any chose in action belonging to [Rhodes]" arising from the August 9, 2020, crash.  (Docket Entry 1-1 at 2.)[3] Thus, Plaintiff alleges that he "has the capacity to bring this action and he brings this action in his capacity as the court-appointed Receiver."  (Compl. ¶ 3.)[4]

## II.  DISCUSSION

### a.  The Parties' Arguments

GEICO argues that dismissal is appropriate because the Complaint fails to state a plausible claim for breach of contract or bad faith against it for failure to settle.  (Docket Entry

---

[3] Like patents, trademarks, and goodwill, a "chose in action" is an intangible asset. *In re Edmundson*, 273 N.C. 92, 95, 159 S.E.2d 509, 511-12 (1968) (the potential right of the administrator of decedent's estate against the insurance company was a chose in action, an intangible asset of the estate).

[4] Defendant intends to pursue an argument in the North Carolina receivership court regarding Plaintiff's receivership status.  (*See* Docket Entry 11 at 5 n.2).

6

11 at 6-10.)  GEICO contends that "[t]he Complaint and exhibits attached demonstrate that GEICO offered to settle for policy limits, [and] that [Schober] withdrew her settlement demand." (*Id.* at 6.)  It further argues that "GEICO never refused to settle the claim.  Plaintiff did." (*Id.* at 7.)  GEICO argues that its having presented Attorney Stiles with a check for the $100,000 policy limit amounted to paying the claim and demonstrated GEICO's good faith willingness to settle. (*See id.* at 7-10.)  It argues that "before GEICO could respond to the revised terms of [Schober's] demand, and one day after returning [said] check, [Schober] withdrew her demand under the guise that collectible assets were available[,]" which precluded GEICO from responding to the demand. (*Id.* at 8.)  GEICO also argues that none of its conduct in attempting to settle the claim was aggravating, outrageous, unfair, or deceptive. (*See id.* at 9-10.)

In response, Plaintiff states that the facts alleged sufficiently state the claims for relief asserted in the Complaint. (Docket Entry 12 at 7.)  In particular, Plaintiff argues that Schober did not make an initial settlement demand, and, alternatively, that any settlement demands made were refused by GEICO, which constituted bad faith. (*Id.* at 9-16.)  Moreover, Plaintiff argues that GEICO's reliance on sending the check to Schober's attorney is misplaced, since "the case was never settled, and the money never belonged to Schober." (*Id.* at 17.)  As explained below, the undersigned finds that Plaintiff's Complaint fails to set forth sufficient facts to state a claim to relief that is plausible on its face; therefore, GEICO's motion will be granted.

### b. <u>Standard of Review</u>

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' " must be

dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted).

The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[,] … unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible that the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557). Even though matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion, the court can consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. *Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp.3d 568, 573 (M.D.N.C. 2019).

Here, the undersigned considers the twenty-two exhibits attached to the Complaint and referenced therein, which include copies of the receivership order, court filings from the underlying tort action, the insurance policy at issue, correspondence between Ms. Bryant and Attorney Stiles, both versions of the release at issue, the check at issue, correspondence

between Attorney Skinner and Attorney Stiles, and proof of other pertinent mailings. (*See* Docket Entries 1-1 through 1-22.)

### c. <u>Counts I and III</u>

"Pursuant to North Carolina law, the interpretation of an insurance policy is a question of law" for the court. *State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am.*, 343 F.3d 249, 254 (4th Cir. 2003); *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295 (2020).[5] More specifically, it is a question of contract law. *Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299 (2000). In North Carolina, compromise agreements and settlement agreements "are governed by general principles of contract law." *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001) (citing *McNair v. Godwin*, 262 N.C. 1, 7, 136 S.E.2d 218, 223 (1964)). "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of the contract." *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 276 (2019) (citations omitted); *Edwards v. Genex Coop., Inc.*, 777 F. App'x 613, 624 (4th Cir. 2019); *Poor v. Hill*, 138 N.C. App. 19, 25, 530 S.E.2d 838 (2000).

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228 (1985). More specifically, North Carolina "law imposes on the insurer the duty of carrying out in good faith its contract of insurance," including the insurer's "right to effectuate settlement." *Alford v. Textile Ins. Co.*, 248 N.C. 224, 229 (1958) ("[C]ourts have consistently held that an insurer owes a duty to its insured to act diligently and in good faith in effecting settlements within policy limits.").

---

[5] No party disputes application of North Carolina law.

###### i. **Count I**

Here, Plaintiff sets forth in the Complaint contractual duties, express and implied, that GEICO owed to Rhodes. Specifically, Count I points to the express language of the Policy that provides as follows:

> We will pay damages for bodily injury or property damage for which any **insured** becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the **insured**. **We will settle** or defend, **as we consider appropriate, any claim or suit asking for these damages**. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

(Compl. ¶ 71 (emphasis in Complaint); *see also* the Policy, Ex. 3, Docket Entry 1-3 at 4.) Plaintiff also alleges other implicit duties of acting diligently in effecting settlements, and of good faith and fair dealing. (Compl. ¶¶ 74, 75.) Plaintiff thus alleges that GEICO breached the aforementioned express and implied duties when it was given an opportunity to settle upon being presented with the March 5, 2021, reasonable settlement demand of the Schober Claim, failed to settle, and thus subjected Rhodes to the $2.8 million dollar judgment. (*Id.* ¶¶ 77-84.)

The Court concludes that Count I of the Complaint does not sufficiently allege a claim for breach of the contractual duty to settle or a claim for a breach of the implied covenant of good faith and fair dealing. First, the Court notes that the basis upon which Plaintiff asserts Count I of the Complaint implicates an explicit, direct contractual provision (breach by failing to settle) and an implicit contractual provision (breach of the implied covenant of good faith and fair dealing). However, under the circumstances, this is a distinction without a difference, in that "[r]egardless of any contractual provision reserving to the insurer the exclusive right to settle a claim as it sees fit, any settlement must be made in good faith." *Nationwide Mut. Ins.*

*Co. v. Pub. Serv. Co. of N. Carolina*, 112 N.C. App. 345, 350, 435 S.E.2d 561, 564 (1993); *Mezzanotte v. Freeland,* 20 N.C. App. 11, 17, 200 S.E.2d 410, 414 (1973) ("Where a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play."), *cert. denied,* 284 N.C. 616, 201 S.E.2d 689 (1974). Therefore, as the express and implied contractual provisions are generally indistinguishable, the undersigned addresses Count I as a single claim. *See Sutherland v. Domer*, No. 1:17CV769, 2018 WL 4398259, at *5 (M.D.N.C. Sept. 14, 2018) ("When a plaintiff's claim for breach of the implied covenant of good faith is based on an alleged breach of the express terms of the contract, these two claims are treated as a single breach of contract issue and evaluated together.).[6]

As stated above, implicit in all contracts under North Carolina law is the agreement that parties will engage in good faith and fair dealing; particularly in the insurance context, any settlement must be made in good faith, since "an insurer is required to act in good faith in exercising its right to settle a claim against the insured." *Nationwide Mut. Ins. Co. v. Pub. Serv. Co. of N. Carolina*, 112 N.C. App. 345, 350, 435 S.E.2d 561, 564 (1993). Under the good-faith covenant, "neither party [may] do anything which injures the right of the other to receive the benefits of the agreement." *Robinson v. Deutsche Bank Nat'l Tr. Co.*, No. 5:12-CV-590-F, 2013 WL 1452933, at *11 (E.D.N.C. Apr. 9, 2013) (unpublished) (quotation omitted). In that respect, "[t]he insurer must give due regard to the interests of the insured, … but this does not mean

---

[6] *But see In re Caceres*, No. 18-80776, 2023 WL 2543713, at *44 (Bankr. M.D.N.C. Feb. 27, 2023) (finding plaintiff's combined breach of contract claim more properly analyzed as separate breach of contract and breach of implied covenant claims).

that the insurer must give more consideration or weight to the interests of the insured than its own interests." *Nationwide Mut. Ins. Co.*, 112 N.C. App. At 350, 435 S.E.2d at 564.

Thus, "[i]n the insurance context, a claim for breach of the covenant of good faith and fair dealing requires three elements: '(1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct.' " *Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co.*, 359 F. Supp. 3d 306, 314 (E.D.N.C. 2019) (quoting *LRP Hotels of Carolina, LLC v. Westfield Ins. Co.*, No. 4:13-CV-94-D, 2014 WL 5581049, at *4 (E.D.N.C. Oct. 31, 2014)); *Lovell v. Nationwide Mut. Ins. Co.*, 108 N.C. App. 416, 421, 424 S.E.2d 181, 184 (1993). "Bad faith means 'not based on honest disagreement or innocent mistake.' " *Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.*, 11 F. App'x 225, 239 (4th Cir. 2001) (quoting *Dailey v. Integon Gen. Ins. Corp.,* 75 N.C. App. 387, 331 S.E.2d 148, 155 (1985)). "Aggravated conduct is defined to include fraud, malice, gross negligence, [and] insult" done "willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." *Blis Day Spa, LLC v. Hartford Ins. Grp.*, 427 F. Supp. 2d 621, 631 (W.D.N.C. 2006) (quotations omitted).

Here, the Complaint fails to allege bad faith on the part of GEICO. Plaintiff alleges that the March 5, 2021, letter gave GEICO the "opportunity to fully protect Rhodes from personal liability[.]" (Compl. ¶ 78.) However, Plaintiff does not plausibly allege that GEICO refused or rejected this demand or even allowed a time-limited demand to expire. Rather, the Complaint alleges that after the March 5, 2021, letter was communicated, email communications were exchanged regarding the proposed modifications to the release terms, and approximately 15 days later, Schober's attorney withdrew the settlement demand and

returned the $100,000 check. (*Id.* ¶¶ 54-57, 59-60.) The Court finds that these allegations do not plausibly allege bad faith on the part of GEICO. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Columbia Ins. Co. v. Reynolds*, 438 F. Supp. 3d 614, 621 (D.S.C. 2020) ("A carrier's duty to protect the interests of its insured does not require a carrier to immediately accede to a demand for settlement before it has had a reasonable time to conduct an investigation."), *aff'd sub nom. Columbia Ins. Co. v. Waymer*, 860 F. App'x 848 (4th Cir. 2021); *Noonan v. Vermont Mut. Ins. Co.*, 761 F. Supp. 2d 1330, 1336 (M.D. Fla. 2010) ("The linchpin of the insurer's liability is its *unreasonable* delay in tendering its policy limit." (emphasis in original)).

### ii. Count III

Nor do Plaintiff's contentions of bad faith alleged under Count III of the Complaint suffice. Rather, Count III also fails to state a claim upon which relief may be granted. "[T]he elements of a bad faith refusal to settle [a] claim are the same as those for breach of the covenant of good faith and fair dealing." *Michael Borovsky Goldsmith LLC*, 359 F. Supp. 3d at 315; *In re Caceres*, 2023 WL 2543713 at *46 ("The two claims, breach of the implied covenant of good faith and fair dealing and bad faith failure to settle, are closely intertwined; the tort of bad faith failure to settle is rooted in an insurer's breach of its implied covenant of good faith and fair dealing in effectuating its contractual duty to defend or settle claims against the insured.").

Under Count III of the Complaint for bad faith refusal to pay the insurance claim, Plaintiff alleges that GEICO acted in bad faith by "cho[osing] to save money" in "hiring unqualified claims handlers" and failing to train and supervise those individuals on the Policy

13

and applicable law.  (Compl. ¶ 104.)  Plaintiff further alleges that these acts constitute aggravated and outrageous conduct as GEICO refused to defend in good faith.  (*Id.* ¶ 105.) However, Plaintiff alleges no facts and forecasts no evidence to support the conclusory contention that Ms. Bryant was "unqualified," and Plaintiff cites no cases in support of the argument that hiring "unqualified" claims handlers is evidence of bad faith or of aggravating or outrageous conduct, particularly where negotiation or settlement efforts last only a few days before being revoked by someone other than the insurer.

Even assuming *arguendo* that Plaintiff's contentions could plausibly allege a delay in negotiating attributable to GEICO, such brief delay as alleged without other aggravating circumstances is insufficient for Counts I and III to proceed.  *See Westchester Surplus Lines Ins. Co. v. Clancy & Theys Const. Co.*, No. 5:12-CV-636-BO, 2014 WL 2157442, at *5 (E.D.N.C. May 23, 2014) (unpublished) ("Where courts have found that a refusal to settle an insurance claim was an act of bad faith there has been ample evidence to show not only delay in investigation but also other aggravating factors such as the offer of a woefully low settlement amount, reliance on estimation of damage and repairs submitted by a clearly unqualified professional, and evidence that the insurance company 'stirred up hate and discontent' against its insured by making false accusations regarding the insured's participation in the loss.") (citations omitted), *aff'd in part sub nom. Westchester Surplus Lines Ins. Co. v. Clancy & Theys Constr. Co.*, 683 F. App'x 259 (4th Cir. 2017).  Accordingly, because Plaintiff's allegations are not sufficient to plead bad faith or aggravating or outrageous conduct, Defendant's Motion to Dismiss is granted as to Counts I and III.

14

**d. <u>Count II</u>**

Count II includes claims that GEICO's acts were unfair or deceptive under North

Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA"),

and N.C. Gen. Stat. § 58-63-15(11) (the "Claims Act"). Specifically, Plaintiff alleges that

> GEICO violated [the Claims Act] in one or more of the following unfair or
> deceptive acts:
>
> a. By failing to acknowledge and act reasonably promptly upon communications
>    with respect to claims arising under the [Policy], for example by failing to
>    settle the Schober [C]laim after receiving the March 5, 2021[,] letter from
>    Attorney Stiles containing the demand for settlement; [and]
> b. By not attempting in good faith to effectuate prompt, fair and equitable
>    settlements of claims in which liability has become reasonably clear[.]

(Compl. ¶ 90.) Plaintiff goes on to allege that "[b]y violating [the Claims Act] in the manner

described above, GEICO committed unfair or deceptive trade practices in or affecting

commerce in violation of [the UDTPA.]" (*Id.* ¶ 91.) Plaintiff alleges that GEICO violated the

UDTPA in the following ways:

> a. By failing to adjust the Schober Claim fairly;
> b. By failing to follow its own standards;
> c. By failing to act reasonably in communications;
> d. By failing to effect a fair settlement in good faith; and
> e. By putting GEICO's illegitimate interests ahead of Rhodes' legitimate
>    interests when GEICO failed and refused to settle the Schober Claim even
>    though GEICO knew that it was contractually obligated settle the claim to
>    protect Rhodes.

(*Id.* ¶ 92.) Plaintiff alleges that "GEICO placed its own financial interests ahead of Rhodes'

financial interests in bad faith … [thereby] knowingly expos[ing] Rhodes to great financial

harm [namely, a judgment in excess of $2.8 million against him, which together constitute]

substantial aggravating circumstances accompanying GEICO's breach of the GEICO Policy."

(*Id.* ¶¶ 91-95.)  GEICO moves to dismiss Plaintiff's Complaint and argues that none of its conduct was unfair or deceptive.  (Docket Entry 11 at 10.)

As an initial matter, the Claims Act does not authorize a private cause of action.  *See Lifebrite Hosp. Grp. of Stokes, LLC v. Travelers Prop. Cas. Co. of Am.*, No. 1:22-CV-849, 2023 WL 6201460, at *5 (M.D.N.C. Sept. 22, 2023) (unpublished) (citing N.C. Gen. Stat. § 58-63-15(11)).  However, the Complaint does explicitly assert a UDTPA cause of action.  The "UDTPA generally prohibits unfair and deceptive acts, while conduct that violates [the Claims Act] constitutes an unfair or deceptive act as a matter of law."[7]  *Id.* (citing *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396 (4th Cir. 2018)).  "Thus, a plaintiff's private remedy for violation of [the Claims Act] is to file a UDTPA claim.  A plaintiff may file a standalone UDTPA claim, separate and apart from [the Claims Act], or a UDTPA claim arising out of a violation of [the Claims Act]."  *Id.* (citing *Elliott*, 883 F.3d at 396, 397 n.8).

The UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."  N.C. Gen. Stat. § 75-1.1(a).  To state a UDTPA claim, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to

---

[7] "[A]lthough violations of [the Claims Act] are actionable only by the Commissioner of Insurance, the types of conduct enumerated [therein] can be used to support a private plaintiff's cause of action under the UDTPA.  … In fact, North Carolina courts have recognized that a violation of any conduct described within [the Claims Act] constitutes an unfair or deceptive act or practice under the UDTPA as a matter of law."  *Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 983 F. Supp. 2d 652, 660 (M.D.N.C. 2013) (citing *Federated Mut. Ins. Co. v. Williams Trull Co., Inc.*, 838 F.Supp.2d 370, 421 (M.D.N.C. 2011)).  To become actionable, a Claims Act claim requires repeated violations that "indicate a general business practice."  *Id.*  A UDTPA claim arising from a violation of [the Claims Act] does not require the additional showing of frequency because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers."  *Id.* (citing *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396 (4th Cir. 2018) (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000))).

16

plaintiffs. *Waterford I at Cary Park Condo. Homeowners Ass'n, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, 669 F. Supp. 3d 531, 535 (E.D.N.C. 2023); *SciGrip, Inc. v. Osae*, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71-72, 653 S.E.2d 393, 399 (2007).

Here, the Complaint alleges violations of the UDTPA, (*see* Compl. ¶¶ 87, 91, 92, 93, 94, 95, 98) and of the Claims Act (*see id.* ¶¶ 90, 91, 92), but Plaintiff makes no arguments specific to the UDTPA or to the Claims Act in his Response (*see generally* Docket Entry 12). Rather, the entirety of Plaintiff's Response argues in terms of the bad-faith and breach-of-contract allegations brought in Counts I and III. (*See id.* at 7-17.) Plaintiff therefore concedes any claims arising under the UDTPA or the Claims Act,[8] and Count Two thus fails. *See Bacon v. State Auto Prop. & Cas. Ins. Co.*, No. 1:20cvl007, 2021 WL 2207056, at *10 (M.D.N.C. June 1, 2021) (unpublished) (dismissing claims under omitted subsections of the Claims Act when plaintiff failed to address them in their response); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV00918, 2010 WL 1667285, at *6-9 (M.D.N.C. Apr. 23, 2010) (explaining that a party concedes an opponent's argument by failing to address it in their response) (collecting cases).

Even assuming *arguendo* that Plaintiff had not abandoned Count Two by failing to address it in his Response, the Complaint does not contain factual allegations that support violations of said subsections (*see generally* Compl.), providing further basis for dismissal of such claims. *See Iqbal*, 556 U.S. at 678; *see also Bacon*, 2021 WL 2207056 at *10. "The general

---

[8] The Fourth Circuit has noted that there is "an open question on 'whether conduct that violates [the Claims Act] is a *per se* violation of [the UDTPA], or instead whether that conduct satisfies [only the UDTPA's] conduct requirement of an unfair or deceptive act or practice.'" *Elliott*, 883 F.3d at 396 n.7 (italics added). The latter interpretation would require a plaintiff to satisfy the remaining elements of a UDTPA claim." *DENC, LLC v. Phila. Indemnity Ins. Co.*, 32 F.4th 38, 50 n.4 (4th Cir. 2022). However, here, "[r]egardless of whether Plaintiff sufficiently alleged the … elements of a UDTPA claim, Plaintiff fails to allege an unfair or deceptive act or practice." *See Lifebrite*, 2023 WL 6201460 at *5 n.10.

factual allegations in the [C]omplaint involve claims indistinguishable from the underlying breach of contract, which cannot by themselves support a UDTPA claim." *Waterford*, 669 F. Supp. 3d at 537 (citing *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 224 (4th Cir. 2009); *Respess v. Crop Prod. Servs., Inc.*, No. 4:15-CV-00176, 2016 WL 3821163, at *5 (E.D.N.C. July 13, 2016) (unpublished), *Rider v. Hodges*, 255 N.C. App. 82, 90-91, 804 S.E.2d 242, 249; *Mitchell v. Linville*, 148 N.C. App. 71, 75, 557 S.E.2d 620, 623-24 (2001)). "Accordingly, the court dismisses [Plaintiff's] UDTPA claim." *Id.*

Likewise, the Complaint's recitation of the language of [the Claims Act] interspersed with the same facts used in the Complaint to allege that GEICO acted in bad faith and violated state contract law (Compl. ¶¶ 90, 91, 92) are together insufficient to state a claim under that statute. Merely invoking a subsection of § 58-63-15(11) does not suffice to survive a motion to dismiss. *See Neshat v. Nationwide Mut. Fire Ins. Co.*, No. 5:20-CV-664-D, 2021 WL 2168906, at *5 (E.D.N.C. May 27, 2021) (citations omitted); *Manoula, LLC v. Ohio Sec. Ins. Co.*, No. 21-CV-00718, 2022 WL 129322 (M.D.N.C. Jan. 13, 2022) (unpublished) ("Simply parroting the language of [a statute] is not sufficient to survive a motion to dismiss."), *aff'd*, No. 22-1154, 2022 WL 17716898 (4th Cir. Dec. 15, 2022); *see also Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 328 (4th Cir. 2001) ("Rule 12(b)(6) requires more than the mere recitation of … statutory language."). Rather, to properly state such a claim, a plaintiff must "identify specific failures or how those alleged failures damaged them." *Neshat*, 2021 WL 2168906, at *5 (cleaned up).

Here, "[Plaintiff] contends, in conclusory fashion, that [GEICO] did '[n]ot attempt[ ]in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim after

liability had become reasonably clear,' " and "fail[ed] to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance policy, for example by failing to settle the … claim after receiving the … letter from Attorney Stiles containing the demand for settlement" in violation of §§ 58-63-15(11)(f) and 58-63-15(11)(b) (Compl. ¶ 90). *See Manoula*, 2022 WL 129322, at *7. "In order to state a claim under subsection (f), the [insured] must plead sufficient factual allegations demonstrating that [the insurer] did not attempt in good faith to effectuate the prompt, fair, and equitable settlement of the claims." *Neshat*, 2021 WL 2168906, at *4 (cleaned up). An insurer "does not have a duty to settle an insured's claim" and "only has a duty to consider settlement of the claim in good faith." *Blis Day Spa*, 427 F. Supp. 2d at 635-36 (W.D.N.C. 2006).

Here, Plaintiff does not allege any factual basis for how GEICO violated subsection (f), it merely parrots the statutory language of N.C. Gen. Stat. § 58-63-15(11)(f). Said allegation is conclusory and therefore fails. As for subsection (b), the only factual basis Plaintiff alleges is that GEICO failed to settle the claim after receiving the March 5, 2021, letter from Attorney Stiles containing the demand for settlement. "However, the [C]omplaint does not evidence the type of complete lapse in communication other courts have focused on, … or responses that were unreasonably prompt under the circumstances, given that, on the [C]omplaint, the alleged delays in communication occurred in the wake of [an attempt to clarify Attorney Stiles' modification of the language of the release that was ultimately unfruitful] (*see* Compl. ¶¶ 54-57; Ex. 8, Docket Entry 1-8 at 5; Ex. 13, Docket Entry 1-13 at 1-2; Ex. 15, Docket Entry 15, Ex. 16, Docket Entry 16). *See Labudde v. Phoenix*

*Ins. Co.*, No. 7:21-CV-197-FL, 2022 WL 2651846, at *8 (E.D.N.C. July 8, 2022) (unpublished) (citing *Guessford*, 918 F. Supp. 2d at 457-58, 465).

Thus, "[t]he [C]omplaint fails to state a plausible claim under 58-63-15(11)(b) for the type of unreasonable and delayed communication that rises to 'conduct [that] is inherently unfair, unscrupulous, immoral, and injurious to consumers.' " *Id.* (citing *Gray* 352 N.C. at 71). "As [Plaintiff] has failed to plausibly allege a violation of the Claims Act and/or the UDTPA, the UDTPA claim will accordingly be dismissed." *Manoula*, 2022 WL 129322, at *8; *see also Newman v. N. Carolina Ins. Underwriting Ass'n/N. Carolina Joint Underwriting Ass'n*, No. 5:20-CV-610-FL, 2021 WL 9816246, at *9 (E.D.N.C. Sept. 11, 2021) (unpublished) ("Without any factual allegation by Plaintiff to show that Defendant had any additional duty, the court finds that Defendant is not liable under § 58-63-15(11)(b)."), *report and recommendation adopted sub nom. Newman v. N. Carolina Ins. Underwriting Ass'n/N. Carolina Joint Underwriting Ass'n*, No. 5:20-CV-610-FL, 2021 WL 4476626 (E.D.N.C. Sept. 29, 2021).

Given the Court's decision to grant GEICO's Motion to Dismiss, the only remaining matter is to determine whether the Complaint should be dismissed with or without prejudice. "The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." *In re Marriott Int'l, Inc. v. Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 156 (D. Md. 2021) (cleaned up). "Generally, when there has been no opportunity to amend, the dismissal should be without prejudice and the plaintiff granted an opportunity to amend." *See Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013).

Here, since Plaintiff has not amended his complaint nor sought leave to do so, the undersigned will dismiss the instant action without prejudice. *Accord Labudde*, 2022 WL

2651846 at *9 (granting defendant's motion to dismiss and dismissing plaintiff's claims without prejudice in action involving UDTPA and Claims Act); *Lifebrite*, 2023 WL 6201460 at *8 (same); *Jumas Food Mart v. Chubb Ins.*, No. 1:22CV1137, 2023 WL 4236224, at *9 (M.D.N.C. June 28, 2023) (unpublished) (similar).[9]

## III. <u>CONCLUSION</u>

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendant Government Employees Insurance Company's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.2 (Docket Entry 10) is **GRANTED**. Plaintiff's Complaint is dismissed without prejudice.

/s/  Joe L. Webster
United States Magistrate Judge

April 9, 2025
Durham, North Carolina

---

[9] This Court's dismissal without prejudice should not be construed as a comment on the merits of the underlying action. *See Dazza v. Hollingsworth*, No. CIV.A.12-7568 JBS, 2013 WL 6187422, at *2 (D.N.J. Nov. 26, 2013) (unpublished). Nor should it be construed as an invitation to initiate meritless litigation in this District or anywhere else. *See Whitehead v. Sony Pictures*, No. CV 16-0580 (SRN/BRT), 2016 WL 3064074, at *2 (D. Minn. May 31, 2016) (unpublished).

21